
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

OBIE L. LOVELACE,

         **Plaintiff,**

v.                                         **Civil No. 2:19cv75**

HAROLD CLARKE, et al.,

         **Defendants.**

## MEMORANDUM OPINION & ORDER

This matter is before the Court on two motions to dismiss filed by Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 7, 13. Plaintiff's complaint, filed pursuant to 42 U.S.C. § 1983, alleges that Defendants provided Plaintiff with constitutionally inadequate medical care during his prior term of incarceration, with Defendants' treatment decisions purportedly driven by their desire to avoid the high cost of the needed treatment. Defendants seek dismissal on various grounds, including qualified immunity. For the reasons set forth below, both of Defendants' motions to dismiss are **DENIED**.

### A. Facts

Plaintiff alleges that Defendants have "instituted a state sanctioned policy and practice of the unconstitutional deprivation of medical care to inmates with chronic Hepatitis C." Compl. ¶ 1, ECF No. 1. Plaintiff asserts that when he entered the Virginia Department of Corrections ("VDOC") in 2010, he had been diagnosed

with Hepatitis C and HIV, "two deadly conditions," and that his VDOC medical record "repeatedly and unequivocally" documents his Hepatitis C. Compl. ¶¶ 13-15. During his multi-year term of incarceration, Plaintiff "pleaded with VDOC medical staff to administer lifesaving treatment for his chronic Hepatitis C infection," but such pleas were repeatedly denied. Compl. ¶ 2-3.

More specifically, Plaintiff alleges Dr. Charles Campbell ("Dr. Campbell"), one of the named Defendants, began treating him in 2015 or 2016 and "general lab tests" ordered in 2016 confirmed that Plaintiff was infected with Hepatitis C. Compl. ¶ 18. Plaintiff asserts that "[f]rom 2016 to present the standard of care in treatment of chronic Hepatitis C is the use of DAAs [(Direct Acting Antiviral drugs)] and to treat or approve for treatment everyone regardless of the severity of [their liver] fibrosis or cirrhosis." Comp. ¶ 20.[1] Notwithstanding such updated standard of care, Plaintiff asserts that from June of 2016 through April of 2018, "VDOC Treatment Guidelines" provided that no inmate would receive treatment for chronic Hepatitis C, regardless of how far along such illness had progressed, if such inmate had less than "9 months remaining on [his or her] sentence." Compl. ¶¶ 24, 33. Plaintiff asserts that there was no valid medical basis

---

[1] Plaintiff's complaint supports such assertion by referencing a purported change in treatment guidelines published by the American Association for the Study of Liver Disease (AASLD), asserting that such guidelines "changed in 2016" based on emerging medical data. Compl. ¶ 21-22.

for such policy because the accepted drug regimen typically leads to a cure within "90 days or less," further claiming that the nine-month policy was grounded in "financial considerations." Compl. ¶¶ 24, 57.

While Plaintiff alleges that he had chronic Hepatitis C that went untreated by VDOC for many years, it appears that the thrust of his allegations rely on the following events: (1) Plaintiff explicitly requested that he receive the most common drug to treat and cure Hepatitis C in early February 2017; (2) shortly thereafter, Plaintiff was informed by Defendants' agent that VDOC had "strict criteria" for administering Hepatitis C treatment, and that his treatment plan would be based on his labs; (3) on or about February 23, 2017, Defendants knew, as a result of Plaintiff's January 2017 FibroScan, that Plaintiff's medical condition had worsened as he had "F-4 cirrhosis of the liver from untreated Hepatitis C"; (4) Defendants refused to treat Plaintiff's Hepatitis C between February 23, 2017 and August 2017 notwithstanding their knowledge of Plaintiff's worsening medical condition, causing Plaintiff to utilize the VDOC grievance procedure beginning on August 18, 2017; and (5) Plaintiff was again informed in late August that VDOC had "strict criteria" for treatment and that there was not enough time to complete treatment by his November 2017 release date—no medical justification for the denial of treatment was provided. Compl. ¶¶ 27-35. Plaintiff's

3

lawsuit advances two counts, the first is a § 1983 claim against Dr. Campbell, Dr. Mark Amonette, and Dr. Steve Henrick, asserting cruel and unusual punishment by prison officials based on a failure to render effective medical treatment, and the second is a § 1983 "supervisory liability" claim against Harold Clarke and Dr. Mark Amonette. Compl. ¶ 55-59.

## B. Applicable Legal Standards

### 1. 12(b)(6) Standard

The Rule 12(b)(6) standard of review permits dismissal when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, and a district court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." Kensington Volunteer Fire Dep't v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012) (citation omitted)).

Because a 12(b)(6) challenge attacks the sufficiency of a complaint, a Court "generally cannot reach the merits of an affirmative defense," except "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007). In other words, a motion to dismiss in

4

reliance on an affirmative defense may be considered only "if all facts necessary to the affirmative defense 'clearly appear <u>on the face of the complaint</u>.'" <u>Id.</u> (quoting <u>Richmond, Fredericksburg & Potomac R.R. v. Forst</u>, 4 F.3d 244, 250 (4th Cir. 1993)). A contrary rule would improperly require a plaintiff to affirmatively plead "matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." <u>Id.</u> at 466.

## 2. Eighth Amendment Standard

To prove cruel and unusual punishment by prison officials based on a failure to render effective medical treatment, in violation of the Eighth Amendment, a plaintiff must satisfy a two-pronged test. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). The first prong, which is an objective inquiry, asks whether the deprivation is "sufficiently serious." <u>Id.</u>; <u>Scinto v. Stansberry</u>, 841 F.3d 219, 225 (4th Cir. 2016). The second prong, a subjective inquiry, requires the inmate to demonstrate that the prison officials acted with "deliberate indifference" toward his or her needs. <u>Farmer</u>, 511 U.S. at 839-40; <u>Scinto</u>, 841 F.3d at 225.

A "serious medical need" sufficient to meet the objective first prong is a "need that has either been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Scinto</u>, 841 F.3d at 225 (quotation marks and citation omitted). A medical need may also be sufficiently serious if a

5

"denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)). Accordingly, a "delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1189 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002).

"Deliberate indifference" sufficient to meet the subjective second prong requires a plaintiff in a medical needs case to prove "the official's 'actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction.'" Scinto, 841 F.3d at 226 (alteration in original) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)). This can be proven through "direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Id. (quoting Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015)). A prison official is not liable if he or she "knew the underlying facts but believed (albeit

unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844. Because mere negligence in diagnosis or treatment is insufficient to state a constitutional claim, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." Jackson, 775 F.3d at 178 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). An inmate seeking to prove an Eighth Amendment violation therefore cannot rely on what an official "should have known." Id.

Directly relevant to the deliberate indifference alleged in this case is the degree to which prison officials are permitted to consider cost when evaluating treatment options. As explained by the Third Circuit, "the deliberate indifference standard of Estelle does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997). Accordingly, the "cost of treatment alternatives" is a permissible factor to consider when "determining what constitutes adequate, minimum-level medical care." Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006). While cost is an appropriate consideration, "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective." Id. As effectively summarized by another judge of this court:

7

It is an unfortunate fact of modern life that cost considerations must enter into the equation for virtually every person seeking medical treatment, not just inmates. We note that the Eighth Amendment does not forbid prison officials from considering cost in determining the appropriate course of treatment so long as the treatment does not put the prisoner at risk of serious injury and the decision was not made with deliberate indifference. It only becomes unacceptable if prison officials make health care decisions solely upon cost considerations without any medical rationale.

Taylor v. Barnett, 105 F. Supp. 2d 483, 489 n.2 (E.D. Va. 2000).

### 3. Statute of Limitations Standard

Because there is no explicit statute of limitations for § 1983 actions, "[t]he Supreme Court has directed . . . [federal courts to] apply a state's 'statute of limitations governing general personal injury actions' when considering § 1983 claims." Battle v. Ledford, 912 F.3d 708, 713 (4th Cir. 2019) (quoting Owens v. Okure, 488 U.S. 235, 251 (1989)). Virginia applies a two-year statute of limitations to personal injury claims. Va. Code Ann. § 8.01-243(A).

While "state law determines the applicable statute of limitations for § 1983 claims, federal law governs the date on which that limitations period begins to run." Owens v. Balt. City State's Atty's Office, 767 F.3d 379, 388-89 (4th Cir. 2014) (citing Wallace v. Kato, 549 U.S. 384, 388 (2007)). Federal law provides that a limitations period generally begins to run "when the plaintiff knows or has reason to know of his injury"; however, for

a § 1983 claim, a district court should consider "the common-law tort that is most analogous to the plaintiff's § 1983 claim" to ensure that there is not a special limitations rule applicable to such species of claim. Id. (citing Wallace, 549 U.S. at 388). Here, "the tort claim most closely analogous" to Plaintiff's claim is "medical malpractice," and the limitations period for such tort begins to run when "the plaintiff knows of his physical injury and its cause." Devbrow v. Kalu, 705 F.3d 765, 768 (7th Cir. 2013).

### 4. Qualified Immunity Standard

"Qualified immunity, an affirmative defense to liability under § 1983, protects all government officials except those who violate a 'statutory or constitutional right that was clearly established at the time of the challenged conduct.'" Jones v. Chandrasuwan, 820 F.3d 685, 691 (4th Cir. 2016) (quoting Carroll v. Carman, 135 S. Ct. 348, 350 (2014)). In determining whether a defendant is entitled to qualified immunity, the Supreme Court has developed a two-part test. Pearson v. Callahan, 555 U.S. 223, 232 (2009). "First, a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right." Jones, 820 F.3d at 691 (citing Pearson, 555 U.S. at 232). "Second, the court must consider whether the right at issue was 'clearly established' at the time of the alleged misconduct." Id. (citing Pearson, 555 U.S. at 232). "The burden of proof and persuasion with respect to a defense of qualified immunity rests

9

on the official asserting that defense." <u>Meyers v. Baltimore Cty.,</u>
<u>Md.</u>, 713 F.3d 723, 731 (4th Cir. 2013).

### C. Discussion

### 1. Dr. Campbell's Motion to Dismiss

Dr. Campbell's motion to dismiss begins by asserting that
Plaintiff's claim is untimely to the extent it relies on any
events, and/or any injuries suffered by Plaintiff, prior to
February 15, 2017. ECF No. 8. First, such argument has limited
force because it appears that the thrust of Plaintiff's claim is
that Defendants committed Eighth Amendment violations <u>after</u>
February 23, 2017, the date that his cirrhosis was identified from
the FibroScan results. Second, to the extent that Plaintiff does
seek to rely on events occurring prior to February 2017, Dr.
Campbell's cursory limitations argument in his opening brief is
insufficient <u>to carry his burden</u> to establish that such affirmative
defense should be resolved in his favor at this early stage based
on facts that "clearly appear" in the complaint. <u>Goodman</u>, 494
F.3d at 464.

Dr. Campbell next argues that Plaintiff's complaint fails to
state a claim because it fails to adequately allege that Plaintiff
had a "serious medical condition," that Defendants exercised
"deliberate indifference," and/or that Plaintiff suffered a
"significant injury" as a result of the asserted indifference. As
to Dr. Campbell's first argument, that Plaintiff fails to allege

10

a serious medical condition, it is rejected on its face, at least at the pleading stage. See Reid v. Clarke, No. 7:16cv547, 2017 WL 706352, at *5 (W.D. Va. Feb. 22, 2017) (noting that "an infection with Hepatitis C and resulting stage 4 liver cirrhosis" is an infirmity "so obvious that even a lay person would easily recognize the necessity for a doctor's attention") (quotation marks and citation omitted).

In support of his second argument, that Plaintiff fails to allege deliberate indifference to his serious medical condition, Dr. Campbell's brief correctly argues that "deliberate indifference" is a demanding legal standard; however, Plaintiff satisfies such standard at the pleading stage because he alleges that: (1) although Dr. Campbell "monitored" Plaintiff's Hepatitis C over time, Plaintiff received no "treatment" even after the standard of care changed in 2016; (2) by February of 2017, the accepted standard in the medical community was DAA treatment for everyone due to advancements in drug therapy; and (3) the reason Plaintiff was denied DAA treatment in 2017 was not medical, but was instead financial.[2] See Reid, 2017 WL 706352, at *1, *6 (finding that "deliberate indifference" had been adequately

---

[2] Even assuming that a treatment standard other than "universal" DAA treatment was applicable in mid-2017 (such as a standard based on patient prioritization), Dr. Campbell knew that Plaintiff's Hepatitis C had progressed to liver cirrhosis, supporting the inference that Plaintiff should have been on a priority list for DAA treatment in February or March of 2017 (otherwise, the FibroScan would appear to serve little purpose).

alleged at the pleading stage based on, among other claims, the allegation that the plaintiff was denied Hepatitis C treatment "for the non-medical reason" of his scheduled "parole hearing within six months"); Riggleman v. Clarke, No. 5:17cv63, 2018 WL 847783, at *5 (W.D. Va. Feb. 13, 2018) (rejecting, at the 12(b)(6) stage, the assertion that the VDOC had effectively "managed" the plaintiff's Hepatitis C, explaining that the "crux of th[e] lawsuit" alleges that the plaintiff was denied treatment for his Hepatitis C based on "sham" VDOC guidelines that served "as a guise for cost-cutting"); Murray v. Wetzel, No. 3:17cv491, 2019 WL 1303217, at *9-11 (M.D. Pa. Mar. 1, 2019), report and recommendation adopted, No. 3:17cv491, 2019 WL 1298826 (M.D. Pa. Mar. 21, 2019) (noting that as early as August of 2016, federal courts began to recognize that a "monitoring" approach that allowed Hepatitis C inmates to get sicker and sicker before treatment was provided may constitute "deliberate indifference"); Trigo v. Texas Dep't of Criminal Justice-Institutional Div. Officials, 225 F. App'x 211, 212 (5th Cir. 2007) (finding that the plaintiff adequately pled an Eighth Amendment violation based on his claim that he was denied Hepatitis C treatment due to his intake and release dates, noting that such denial of treatment allegedly caused "substantial harm" because it led to the plaintiff "developing cirrhosis").

As to Dr. Campbell's third argument, that Plaintiff fails to adequately allege a significant injury from the asserted indifference, Plaintiff sufficiently alleges a "significant injury" as he alleges sufficient facts to support the plausible inference that his potentially irreversible and untreated cirrhosis worsened, over the period of more than nine months between late February and early December of 2017, because he was denied treatment of any kind. On these alleged facts, Plaintiff has exceeded the "plausibility" requirement necessary to survive a Rule 12(b)(6) motion, and Dr. Campbell's motion is therefore **DENIED**.

## 2. Joint Motion to Dismiss

Defendants Harold Clarke, Dr. Mark Amonette, and Dr. Steve Herrick collectively filed a motion to dismiss alleging that they are immune from suit for monetary damages based on "qualified immunity." ECF No. 13. These Defendants focus their argument on the contention that the constitutional right on which Plaintiff relies was not "clearly established" at the time of Defendants' challenged actions. ECF No. 14.

The parties' dispute on this issue centers in large part on the degree of generality with which to define the "right" at issue. Defendants assert that it should be defined with such precision that the "right" is not clearly established absent controlling precedent declaring that inmates with Hepatitis C have the right

to be treated with DAA drugs. Conversely, Plaintiff seeks a broader definition, arguing that the right at issue is the right to reasonable medical treatment for a known serious medical condition. Each party relies on citations to district court cases from within this Circuit. Compare Cunningham v. Sessions, No. 9:16cv1292-RMG, 2017 WL 2377838, at *4 (D.S.C. May 31, 2017) (identifying "no clearly established statutory or constitutional right at this time for inmates with chronic Hepatitis C to be treated with DAA drugs"); Redden v. Ballard, No. 2:17cv1549, 2018 WL 4327288, at *8 (S.D.W. Va. July 17, 2018), report and recommendation adopted, No. 2:17cv1549, 2018 WL 4323921 (S.D.W. Va. Sept. 10, 2018) (same), with Riggleman, 2018 WL 847783, at *5 (finding that the complaint adequately alleged that "[n]o reasonable official could think this willful refusal to treat [Hepatitis C,] a known, serious condition did not violate the Eighth Amendment").

This Court acknowledges the need to define the asserted right at a relatively "high level of particularity," to both ensure that reasonable decisions by officials remain protected, and that plaintiffs do not plead around such immunity by invoking "well-established but highly abstract rights." Braun v. Maynard, 652 F.3d 557, 562 (4th Cir. 2011) (citations omitted). That said, a "general constitutional rule . . . may apply with obvious clarity . . . even though the very action in question has not previously

been held unlawful," and prison officials may therefore "still be on notice that their conduct violates established law even in novel factual circumstances." Thompson v. Commonwealth of Virginia, 878 F.3d 89, 98 (4th Cir. 2017) (omissions in original) (citations omitted); see Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (explaining that the Court does "not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate").

Synthesizing these guidelines, in the medical context, the proper level of particularity cannot limit the inquiry to whether there is a published controlling case addressing the precise medical condition and symptoms at issue, otherwise, prison officials would be free to decline any medical care until controlling precedent addressed the precise infirmity. Such proposition is best illustrated by the Fourth Circuit's recent decision in Scinto v. Stansberry, where the court rejected the defendants' invitation to define the right with specific reference to the doctor's decision to withhold a dose of insulin from a hostile diabetic inmate. Scinto, 841 F.3d at 235-36. Noting that the right should not be defined with specific reference to the "very actions in question," the Fourth Circuit defined the right as "the right of prisoners to receive adequate medical care and to be free from officials' deliberate indifference to their known medical needs." Id. at 236; see Iko v. Shreve, 535 F.3d 225, 243

n.12 (4th Cir. 2008) (noting that the officers failed to establish that the right at issue was not "clearly established" because, by 2004, "[t]he right to adequate medical care had already been carefully circumscribed in the caselaw").

Applying the Scinto "adequate medical care" standard to this case reveals that the facts in the complaint do not support Defendants' affirmative defense, which turns on both the standard of care for Hepatitis C patients in 2017 and/or the Defendants' reason for not providing any treatment to Plaintiff. See Taylor, 105 F. Supp. 2d at 489 ("[P]laintiff's allegation that defendant was motivated solely by cost considerations and not by an informed medical decision is sufficient to overcome a motion to dismiss."); Scinto, 841 F.3d at 235-36 (rejecting a qualified immunity defense based on a knowing decision to withhold needed medication even though the doctor purportedly "implement[ed] a plan to monitor the inmate" after withholding medication); see also Lee v. Gurney, No. 3:08cv161, 2011 WL 2681225, at *5 (E.D. Va. July 8, 2011) (explaining that a medical professional's challenged performance must be considered in light of "accepted professional judgment, practice, or standards" (quoting Sain v. Wood, 512 F.3d 886, 895 (7th Cir. 2008))). Importantly, the allegations in the complaint plausibly allege that there was "no medical reason" to withhold necessary and effective treatment from Plaintiff. Such fact is at least inferentially supported by Plaintiff's contention that

16

Defendants denied treatment based on an unjustifiable VDOC policy precluding treatment within <u>nine months</u> of an inmate's expected release date even though the widely accepted drug treatment regimen "cures" Hepatitis C in as little as "<u>90 days</u> or less." Compl. ¶ 24 (emphasis added). Because this Court concludes that there are sufficient facts alleged which, if proven true, may demonstrate "that Plaintiff's Eighth Amendment right to adequate medical care and freedom from officials' deliberate indifference to his medical needs was violated," Defendants fail to demonstrate at this time that they are "entitled to qualified immunity." <u>Scinto</u>, 841 F.3d at 236; <u>see</u> <u>Jehovah v. Clarke</u>, 798 F.3d 169, 181–82 (4th Cir. 2015) (finding that the plaintiff plausibly stated a claim that his prison doctors disregarded his serious medical condition because he alleged that his doctors "ignored most" of his symptoms, "disregarded abnormal test results," and "failed to treat any of his symptoms effectively"); <u>Jackson</u>, 775 F.3d at 179 (concluding that a plaintiff can plead an Eighth Amendment violation at the 12(b)(6) stage by alleging facts supporting the inference that the treating physicians "must have known that failing to provide [the disputed treatment] would pose an excessive risk to [the plaintiff's] health").[3]

---

[3] Even if a greater level of particularity is required to properly define the "right" at issue, in this Court's view, <u>the current record</u> fails to demonstrate that it was not clearly established by mid-2017, that a doctor is precluded from delaying/denying treatment to an HIV positive Hepatitis C patient who had progressed to stage H4 liver cirrhosis either in blind

In reaching this conclusion, the Court has carefully considered the recent Riggleman summary judgment ruling on which Defendants strongly rely in their reply brief. Riggleman v. Clarke, No. 5:17cv63, 2019 WL 1867451 (W.D. Va. Apr. 25, 2019). In such summary judgment ruling, the district court held that the defendants were entitled to qualified immunity based on the litigated facts. Riggleman, 2019 WL 1867451 at *7. Such facts illustrated that all patients with chronic Hepatis C are not on equal footing because "[g]enerally, as the level of fibrosis of the liver increases from Stage F0 (no fibrosis) to Stage F4 (cirrhosis), it . . . correlate[s] with the underlying severity of liver disease." Id. at *2. The Court further explained that under now updated VDOC standards, inmates are prioritized based on their "disease severity," with the highest priority patients being those in the most elevated fibrosis categories, as well as those with other "medical conditions that can cause the liver disease to progress more rapidly, such as HIV." Id. at *3; cf. Hinton v. McCabe, No. 3:16cv222, 2018 WL 1542238, at *3 (E.D. Va. Mar. 29, 2018) (explaining that the litigated facts in that case demonstrated that Virginia inmates "with a high fibrosis score, which is indicative of cirrhosis, are eligible for certain treatments"). The plaintiff in Riggleman did not have an advanced

reliance on a policy untethered to medical needs and/or solely to avoid the high cost of the critically needed medical treatment.

fibrosis score (his score was "F0/F1"), and the district court found that "the 'particular circumstances' faced by Defendants," to include the "rapidly evolving legal and medical developments" demonstrated that Defendants were not "on notice" that their conduct violated a "'clearly established' right" at the time Plaintiff was denied treatment with DAAs. Id. at *3, *6-7.

In sharp contrast to the facts in Riggleman, the "particular circumstances" Defendants faced in this case reveal that Mr. Lovelace did not present with asymptomatic Hepatitis C, but rather, he alleges that by early 2017, objective medical evidence proved that he had progressed to the most severe stage of liver damage.[4] Moreover, he alleges that his body was otherwise compromised due to his infection with HIV. With approximately nine months left to serve on his sentence, and with these exacerbated conditions known to medical personnel, Plaintiff asserts that he was denied any form of medical treatment for his Hepatitis C because the widely accepted, and proven effective, treatment was deemed too expensive to administer to him.[5] To the extent Defendants argue that

_____

[4] This Court's ruling accepts Plaintiff's facts as true only for 12(b)(6) purposes, and does not suggest that in 2017, or today, all inmates with Hepatitis C are medically entitled to DAA drug treatment regardless of their associated symptoms/conditions. Cf. Hinton, 2018 WL 1542238, at *3 (explaining that the facts in that case demonstrated that the true "danger with Hepatitis C is that it can lead to cirrhosis of the liver," which can take "years or decades" to develop).

[5] Assuming, without deciding, that VDOC now prioritizes HIV positive inmates and/or inmates with F3 or F4 liver damage for treatment with DAA drugs, Riggleman, 2019 WL 1867451 at *3, the current record fails to demonstrate precisely when such changes went into effect and/or why such changes were

Plaintiff was still "monitored" during the relevant time, the facts viewed in Plaintiff's favor suggest that such monitoring did not serve any meaningful medical purpose if Defendants had already elected to use Plaintiff's discharge date as a justification to withhold the medically necessary treatment. Accordingly, at the 12(b)(6) stage, the instant record is insufficient to demonstrate whether Defendants' actions "qualify as the type of 'bad guesses in gray areas' that qualified immunity is designed to protect," Sims v. Labowitz, 885 F.3d 254, 264 (4th Cir. 2018) (quoting Braun, 652 F.3d at 560), or whether Defendants wantonly disregarded the medically accepted standard of care for an HIV positive patient with Hepatitis C that had progressed to liver cirrhosis for the sole purpose of avoiding the need to pay for an expensive drug treatment protocol. Defendants' motion to dismiss on qualified immunity grounds is therefore **DENIED**.

### D. Summary

For the reasons set forth above, both motions to dismiss pending before the Court are **DENIED**. ECF Nos. 7, 13.

---

(presumably) not in place by the middle of 2017. If the reason such protocol was not in place in 2017 was because the medically accepted treatment options were still "evolving," Defendants would likely be entitled to qualified immunity. In contrast, if the medical evidence that the parties may submit demonstrates that it was well-established by mid-2017 that administrating DAA drugs was the only acceptable standard of care for an HIV positive patient with Hepatitis C whose FibroScan revealed stage F4 cirrhosis, and that Defendants elected to provide Plaintiff with no medication solely to avoid the high costs of the drugs, Defendants are unlikely to be entitled to qualified immunity.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to all counsel of record.

    **IT IS SO ORDERED.**


                                           /s/
                                           Mark S. Davis
                         CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 7 , 2019